UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

|  |  |  |
|---|---|---|
| VIVIAN TZOC SANTAY, | * | |
| | * | |
| | * | |
| Plaintiff, | * | |
| | * | |
| v. | * | |
| | * | Civil Action No. 24-cv-11583-ADB |
| | * | |
| ICE HOUSE LLC d/b/a | * | |
| ICE HOUSE SPORTS BAR | * | |
| | * | |
| Defendant. | * | |
| | * | |
| | * | |
| | * | |

## MEMORANDUM AND ORDER

BURROUGHS, D.J.

Plaintiff Vivian Tzoc Santay ("Plaintiff" or "Tzoc Santay") brings this action against her former employer, Defendant Ice House LLC d/b/a Ice House Sports Bar ("Ice House" or "Defendant"), alleging that her supervisor, Mr. Nieves, discriminated against her on the basis of race, national origin, and sex and failed to pay earned and overtime wages in violation of Massachusetts and federal law.  Currently before the Court is Defendant's partial motion to dismiss for failure to state a claim.  See [ECF No. 8 ("Mot.")].  For the reasons set forth below, Defendant's motion is **GRANTED IN PART** and **DENIED IN PART**.

I. **BACKGROUND**

The following relevant facts are taken primarily from the well-pleaded allegations in Plaintiff's Complaint, [ECF No. 1 ("Complaint") or ("Compl.")], which the Court, as it must,

assumes to be true, drawing all reasonable inferences in Plaintiff's favor, when considering a motion to dismiss.  Ruivo v. Wells Fargo Bank, N.A., 766 F.3d 87, 90 (1st Cir. 2014).

> **A.** **Factual Background**

Plaintiff, a non-English-speaking Black woman of Guatemalan origin, worked for Defendant from October 2021 until March 16, 2023.  See [Compl. ¶¶ 3–4, 32].  During that time, her supervisor, Mr. Nieves, often made offensive comments to Plaintiff in Spanish.  See [id. ¶ 7].  For example, he would regularly tell her:

- "You are a nobody in this country."
- "You have to do what I tell you."
- "You don't have papers."
- "You don't pay taxes."
- "Whenever I want, I can call immigration."
- "I am Puerto Rican; [I] grew up in New York; you don't have papers and we can throw you out of here at any time."
- "We Puerto Ricans have all the rights, buy a house, go on a trip, you don't have papers; you can be deported at any moment."

[Id.].  On one occasion, after Plaintiff complained of a toothache, Mr. Nieves said he knew a dentist, but that the dentist "was for U.S. citizens only."  [Id. ¶ 8].

On more than one occasion, Mr. Nieves showed Plaintiff videos and pictures of male and female genitalia, as well as regularly made sexual comments, which Plaintiff found to be extremely unwelcome and made her feel uncomfortable and unsafe.  See [Compl. ¶¶ 9–13].  For example, on one occasion, Mr. Nieves showed Plaintiff a video of women with tattooed backs and told Plaintiff certain tattoos mean a woman is "for sale."  [Id. ¶ 12].  He then suggested that

Plaintiff get such a tattoo and "put on a short blouse," and said that he would "be [Plaintiff's] first customer." [Id.]. On other occasions, Mr. Nieves asked Plaintiff if she was "horny," [id. ¶ 14], described his sex life with his wife and his wife's buttocks implants in detail, [id. ¶¶ 14, 16], said women who "dress in office clothes" turn him on, [id. ¶ 15], asked Plaintiff to say the names of sexual parts in K'iche', a language Plaintiff speaks, [id. ¶ 17], and told Plaintiff that he had "two women," referring to his wife at home and Plaintiff at work, [id. ¶ 18]. Mr. Nieves also physically touched Plaintiff's behind twice. [Id. ¶ 19]. When she asked why he touched her inappropriately, he replied, "It's not my fault that you have a big ass," and, "I am a man; it is not my fault you provoke me." [Id.].

Plaintiff always rejected Mr. Nieves's advances, which caused him to become angry and upset with her and eventually to threaten her. [Compl. ¶¶ 21–22]. For example, Mr. Nieves often told Plaintiff that he had been in jail, his son was in prison, and that he was not afraid to "do things," elaborating by saying, "[i]f I ever wanted to do something to someone, I would do it to their children," and, "I wouldn't hurt my enemy, but I would hurt his family." [Id. ¶¶ 23–25]. One day, Mr. Nieves showed Plaintiff a knife and told her, "I am well protected because here, you never know, nobody messes with me. I have my knife; they taught me to fight in jail." [Id. ¶ 26]. On another occasion, Mr. Nieves told Plaintiff that his wife carries a gun and that he knew "where to stick [a] knife." [Id. ¶ 27].

While Plaintiff worked at Ice House, she was paid in cash, and not paid for overtime. [Compl. ¶ 28]. She also never received any benefits, including sick days, vacations and meal breaks. [Id. ¶ 29]. She complained to Mr. Nieves about not being paid overtime and benefits like her coworkers, [id. ¶ 31], and shortly thereafter, on March 16, 2023, Mr. Nieves informed her that she had been terminated for complaining about being underpaid, [id. ¶ 32].

### B.     Procedural History

Plaintiff filed this action against Defendant on June 18, 2024.  See [Compl.].  The Complaint asserts fifteen counts, which include:

- race, national origin, and sex discrimination in violation Massachusetts General Laws Chapter 151B ("Chapter 151B") and Title VII of the Civil Rights Act of 1964 ("Title VII"), see [Compl. ¶¶ 35–48 (Counts I and II alleging racial discrimination)]; [id. ¶¶ 49–62 (Counts III and IV alleging national origin discrimination)]; [id. ¶¶ 63–76 (Counts V and VI alleging sex discrimination)]; [id. ¶¶ 77–84 (Counts VII and VIII alleging sexual harrassment)] [1];

- retaliation in violation of Chapter 151B and Title VII, [id. ¶¶ 85–92 (Counts IX and X)];

- failure to pay earned wages in violation of Massachusetts General Laws Chapter 149, §§ 148 and 150, [id. ¶¶ 93–98 (Count XI)];

- failure to pay overtime wages in violation of Massachusetts General Laws Chapter 151, § 1A [id. ¶¶ 99–102 (Count XII)];

---

[1] Plaintiff brings two claims captioned "Sex Discrimination," one under Title VII and one under Chapter 151B.  [Compl. ¶¶ 63–76 (Counts V and VI)].  Plaintiff also brings two claims captioned "Sexual Harassment," again under Title VII and Chapter 151B.  [Id. ¶¶ 77–84 (Counts VII and VIII]).  Defendants moved to dismiss Counts V and VI but not Counts VII and VIII.  [ECF No. 8 at 1; ECF No. 9 at 2 n.2 ("Plaintiff's sexual harassment claims . . . are not the subject of the instant motion.")].

Sexual harassment is considered to be a form of sex-based discrimination.  Perez-Cordero v. Wal-Mart P.R., Inc., 656 F.3d 19, 26 (1st Cir. 2011); Melnychenko v. 84 Lumber Co., 676 N.E.2d 45, 48 (Mass. 1997) ("[S]exual harassment . . . is by legislative direction a form of sexual discrimination.").  Moreover, Plaintiff's "sexual harassment" claims, like the "sex discrimination" claims, are predicated on disparate treatment and hostile work environment theories.  [Id. ¶¶ 79, 83 ("The Defendant terminated Plaintiff because of her refusal to engage in the sexual harassment she was subjected to by her manager.")]; [id. ¶¶ 78, 82 ("The Plaintiff was subjected to sexual harassment, which had the purpose of creating a hostile and humiliating work environment[.]")].

Because Defendant moved to dismiss only the "sex discrimination" claims, not the "sexual harassment" claims, the Court here assesses only the sex discrimination claims.  That said, the parties are advised that these counts are duplicative of one another, and the same analysis would apply to the sexual harassment counts.

- failure to pay overtime wages in violation of the Fair Labor Standards Act ("FLSA"), 29 U.S.C. § 207, [id. ¶¶ 103–06 (Count XIII)];

- wage-based retaliation in violation of Massachusetts General Laws Chapter 149, §§ 148 and 150 and Chapter 151, § 1A, [id. ¶¶ 107–10 (Count XIV)]; and,

- wage-based retaliation in violation of the FLSA, [id. ¶¶ 111–14 (Count XV)].

Defendant moved for dismissal for failure to state a claim under Federal Rule of Civil Procedure 12(b)(6) on July 19, 2024, seeking to dismiss only Counts I–VI, Count XII, and Count XIV. See [Mot.]. Plaintiff opposed Defendant's motion on August 23, 2024. [ECF No. 12].

## II. STANDARD OF REVIEW

To survive a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6), a complaint "must provide 'a short and plain statement of the claim showing that the pleader is entitled to relief.'" Cardigan Mt. Sch. v. N.H. Ins. Co., 787 F.3d 82, 84 (1st Cir. 2015) (quoting Fed. R. Civ. P. 8(a)(2)). This pleading standard requires "more than labels and conclusions," Bell Atl. Corp. v. Twombly, 550 U.S. 544, 545 (2007), and "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009). Rather, a complaint "must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" Id. (quoting Twombly, 550 U.S. at 570).

When evaluating the sufficiency of a complaint, the Court "first must 'distinguish the complaint's factual allegations (which must be accepted as true) from its conclusory legal allegations (which need not be credited).'" Cardigan Mt. Sch., 787 F.3d at 84 (further internal quotations and citation omitted) (quoting García-Catalán v. United States, 734 F.3d 100, 103 (1st Cir. 2013)). "Second, the court must determine whether the factual allegations are sufficient to support the reasonable inference that the defendant is liable for the misconduct alleged." García-

Catalán, 734 F.3d at 103 (internal quotations and citation omitted).  In conducting this analysis, the Court must accept all well-pleaded facts as true and analyze those facts in the light most favorable to the plaintiff's theory, drawing all reasonable inferences in favor of the plaintiff. U.S. ex rel. Hutcheson v. Blackstone Med., Inc., 647 F.3d 377, 383 (1st Cir. 2011).

## III. DISCUSSION

### A. Title VII and Chapter 151B Claims (Counts I–VI)[2]

Plaintiff asserts that Defendant discriminated against her on the basis of race, national origin, and sex in violation of Title VII and Chapter 151B.  Specifically, Plaintiff alleges disparate treatment and hostile work environment claims, alleging for each protected class that 1) she was fired "because of" her membership in that protected class, [Compl. ¶¶ 40, 47 (race discrimination); 54, 61 (national origin discrimination); 68,[3] 75 (sex discrimination)]; and, 2) she was subjected to discrimination "which had the purpose of creating a hostile and humiliating work environment," [id. ¶¶ 38, 45 (race discrimination); 52, 59 (national origin discrimination); 66, 73 (sex discrimination)].  Defendant asserts that Plaintiff has failed to state a claim under either of these statutes for any protected class because she has failed to allege that she suffered an adverse employment action "based upon her protected class" or that "there lies some plausible

---

[2] "[T]he Massachusetts Supreme Judicial Court typically applies Federal case law construing the Federal anti-discrimination statutes in interpreting G.L. ch. 151B." Stratton v. Bentley Univ., 113 F.4th 25, 41 n.10 (1st Cir. 2024) (cleaned up).

[3] This paragraph reads that "[t]he Defendant terminated Plaintiff because of her national origin." [Compl. ¶ 68].  Given that the paragraph falls within the claim for sex discrimination, the Court will assume, favorably to Plaintiff, this was a typographical error and that the paragraph should read that "Defendant terminated Plaintiff because of her sex."

causal connection between her protected class and the alleged hostile work environment." [ECF No. 9 at 4, 6].

### 1.  Disparate Treatment

To make out a prima facie case for disparate treatment under either Title VII or Chapter 151B, a plaintiff must show: "(1) she is a member of a protected class; (2) she was qualified for her position; (3) her employer took an adverse employment action against her; and (4) some evidence of a causal link between her protected status and the adverse employment action." Evans v. Staples, Inc., 375 F. Supp. 3d 117, 123 (D. Mass. 2019) (citing Bhatti v. Trs. of Bos. Univ., 659 F.3d 64, 70 (1st Cir. 2011)).  Although, at the pleading stage, a plaintiff is not required to plead facts sufficient to establish a prima facie case, the prima facie elements "are part of the background against which a plausibility determination should be made."  Id. (quoting Rodriguez-Reyes v. Molina-Rodriguez, 711 F.3d 49, 54 (1st Cir. 2013)).  "At this stage, a 'plaintiff must allege a series of facts which at the very least gives rise to an inference of discriminatory animus.'"  Id. at 124 (quoting Johnson v. Gen. Elec., 840 F.2d 132, 138 (1st Cir. 1988), abrogated on other grounds by Clockedile v. N.H. Dep't of Corr., 245 F.3d 1 (1st Cir. 2001)).

Plaintiff alleges that she is a member of protected classes based on her race (Black), national origin (Guatemalan), and sex (female), [Compl. ¶ 3], and Defendant does not contest that she was qualified for her position, see generally [ECF No. 9].  Plaintiff also alleges that she was terminated, which is "the quintessential adverse employment action."  Rios v. Centerra Grp. LLC, 106 F.4th 101, 113 (1st Cir. 2024); see also [Compl. ¶ 32].  Plaintiff does not, however, allege any facts from which the Court can draw the inference that Defendant terminated her

because of her race, national origin, or sex.[4]  To the contrary, the Complaint specifically attributes Plaintiff's firing not to any protected class but instead to her complaints about not being paid overtime in two separate places, and Plaintiff has not alleged any facts to indicate that this firing was a pretext for discrimination.  [Id. ¶¶ 6 ("During the summer of 2022 and until her termination for complaining about the Defendant's failure to pay her overtime in fall of 2023. . ."); 32 ("Mr. Nieves informed [Plaintiff] that she was terminated for complaining that she was underpaid.")].  Because Plaintiff has not pled any facts from which the Court could plausibly infer causation, and has not alleged that Mr. Nieves's explanation was pretext for an improper basis, Plaintiff's race-based, national origin-based, and sex-based discrimination claims for disparate treatment fail.  Daniels v. Alvaria, Inc., No. 23-cv-10419-DJC, 2024 WL 758172, at *9 (D. Mass. Feb. 23, 2024) (dismissing discrimination claim where plaintiff provided "no factual basis" to support "conclusory allegations of disparate treatment"); Bottomley v. Bos. Pub. Sch., No. 17-cv-12107-LTS, 2018 WL 6682764, at *3 (D. Mass. Dec. 19, 2018) (same).

### 2. Hostile Work Environment

The elements of a claim for hostile work environment under Title VII or Chapter 151B are that (1) the plaintiff is a member of a protected class, (2) she was subjected to unwelcome harassment, (3) the harassment was based on the protected status, (4) "the harassment was so severe or pervasive as to create an abusive work environment," and (5) "the harassment was objectively and subjectively offensive."  Avci v. Brennan, 285 F. Supp. 3d 437, 442 (D. Mass.

---

[4] As discussed supra, within each cause of action, Plaintiff does plead that she was terminated "because of" her race, national origin, and sex.  These "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice," even at this preliminary stage.  Iqbal, 556 U.S. at 678; see also Johnson, 840 F.2d at 138 ("Complaints based on civil rights statutes must do more than state simple conclusions; they must at least outline the facts constituting the alleged violation.").

8

2018) (quoting Prescott v. Higgins, 538 F.3d 32, 42 (1st Cir. 2008)).  Assessing "whether a work environment is hostile requires a fact-specific analysis of the 'frequency of the discriminatory conduct; its severity; whether it is physically threatening or humiliating, or a mere offensive utterance; and whether it unreasonably interferes with an employee's work performance.'" Dexter v. Dealogic, LLC, 390 F. Supp. 3d 233, 242 (D. Mass. 2019) (quoting Thompson v. Coca-Cola Co., 522 F.3d 168, 180 (1st Cir. 2008)).  To plausibly state a claim for hostile work environment, "[t]he alleged conduct must be 'sufficiently severe or pervasive to alter the conditions of the victim's employment and create an abusive working environment.'"  Allard v. Citizens Bank, 608 F. Supp. 2d 160, 166 (D. Mass. 2009) (quoting Oncale v. Sundowner Offshore Servs., Inc., 523 U.S. 75, 78 (1998)); see also Posada v. ACP Facility Servs., Inc., 389 F. Supp. 3d 149, 157 (D. Mass. 2019).

There are two components to the hostile work environment inquiry: subjective and objective.  Allard, 608 F. Supp. 2d at 166.  For the subjective component, "the plaintiff must demonstrate that she actually perceived the environment to be hostile or abusive as a result of the defendant's conduct."  Id. (citing Harris v. Forklift Sys., Inc., 510 U.S. 17, 21–22 (1993)).  For the objective component, the plaintiff must demonstrate that the "alleged conduct was sufficiently severe or pervasive that a reasonable person would perceive the environment to be hostile or abusive."  Id. (citing Harris, 510 U.S. at 21–22).

The weight of Plaintiff's allegations center on Mr. Nieves' sexual harassment and, taken together, state a plausible claim for hostile work environment.  Regarding the subjective component, Plaintiff has pled that she found the "sexual comments to be extremely unwelcome," [Compl. ¶ 10], and that the comments "made her feel extremely uncomfortable and unsafe," [id. ¶ 13].  As to the objective component, Plaintiff has stated a plausible claim that a reasonable

9

person would feel humiliated and demeaned by the facts alleged. She has pled that the sexual harassment was "continuous and pervasive," [id. ¶ 6], consisting of Mr. Nieves making sexual comments, touching Plaintiff inappropriately, and showing her pictures and videos of male and female genitalia at work, [id. ¶¶ 9–20]. She has also pled that, upon rejecting his advances, Mr. Nieves became "angry and upset" and "began . . . threatening her" and her family. [Id. ¶¶ 21–27]. Viewing the allegations in the light most favorable to Plaintiff, a reasonable person would perceive the environment created by Mr. Nieves, based on his sexual comments and conduct, to be humiliating, demeaning, and hostile. The "cumulative effect" of the intimidation and humiliation provides sufficient objective indicia of a hostile work environment. See Posada, 389 F. Supp. 3d at 159; see also Valentin-Almeyda v. Mun. of Aguadilla, 447 F.3d 85, 94 (1st Cir. 2006) (in bringing a claim for sex-discrimination predicated on hostile work environment, "[a]lthough offhand remarks and isolated incidents are not enough, '[e]vidence of sexual remarks, innuendoes, ridicule, and intimidation may be sufficient to support a jury verdict for a hostile work environment'") (quoting O'Rourke v. City of Providence, 235 F.3d 713, 729 (1st Cir. 2001)) (second alteration in original).

Although a closer call, at this stage, Plaintiff has also plausibly pled a claim for hostile work environment premised on national origin. Plaintiff has pled that Mr. Nieves "often made offensive comments in Spanish" toward Plaintiff, including that "she was worthless" and "a nobody in this country." [Compl. ¶ 7]. Mr. Nieves would also threaten Plaintiff by telling her that she did not "have papers," that he could "call immigration" whenever he wanted, that she could "be deported at any moment," and that she "didn't have any rights because she is not a U.S. citizen." [Id.]. Viewing the allegations in the light most favorable to Plaintiff, it is plausible that this recurring conduct was both objectively and subjectively offensive because a

reasonable person would feel intimidated, humiliated, and demeaned by threats of deportation and other immigration-based comments from a supervisor, and Plaintiff plausibly alleges that she in fact felt that way.  Cabi v. Bos. Children's Hosp., 161 F. Supp. 3d 136, 153 (D. Mass. 2016) (stating that the allegedly "frequent and regular nature" of defendant's comments, which were "sex-based, ethnicity-based, race-based, and national-origin based," "supports a finding that the harassment was pervasive" (cleaned up)).

Plaintiff has not, however, pled a plausible claim for hostile work environment based on race.  Plaintiff's complaint is devoid of any factual allegations as to her race other than that she is Black.  See [Compl. ¶ 3]; see generally [id.].  Without additional allegations to establish that Mr. Nieves engaged in racially motivated harassment, Plaintiff has not plausibly pled a hostile work environment based on race.

Because Plaintiff has pled viable hostile work environment claims under Title VII and Chapter 151B on the basis of sex and national origin, Defendant's motion to dismiss as to Counts III–VI is **DENIED**.  Defendant's motion to dismiss is **GRANTED** as to Counts I and II, which are premised on race-based discrimination, given that Plaintiff has not pled a viable discrimination claim for disparate treatment or hostile work environment based on her race.

### B.     Wage Violations (XII and XIV)

Defendant also moves to dismiss Counts XII and XIV, which state claims arising under Massachusetts General Laws Chapter 151 § 1A (the "Massachusetts Overtime Law").  [ECF No. 8; ECF No. 9 at 9].  Plaintiff concedes the dismissal of these two claims.  [ECF No. 12 at 5].  As such, Defendant's motion to dismiss as to Counts XII and XIV is **GRANTED**.

## IV. CONCLUSION

For the reasons set forth above, Defendant's partial motion to dismiss is **<u>GRANTED</u>** as to Counts I, II, XII, and XIV and **<u>DENIED</u>** as to Counts III, IV, V, and VI.

**SO ORDERED.**

November 15, 2024                                         <u>*/s/ Allison D. Burroughs*</u>
                                                         ALLISON D. BURROUGHS
                                                         U.S. DISTRICT JUDGE